UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 4:21-cr-00603-RLW-2 |
| | ) | |
| DWAYNE TIMES, | ) | |
| | ) | |
| Defendant. | ) | |

## GUILTY PLEA AGREEMENT

Come now the parties and hereby agree, as follows:

### 1. PARTIES:

The parties are the defendant Dwayne Times, represented by defense counsel Bret M. Rich, and the United States of America (hereinafter "United States" or "Government"), represented by the Office of the United States Attorney for the Eastern District of Missouri. This agreement does not, and is not intended to, bind any governmental office or agency other than the United States Attorney for the Eastern District of Missouri. The Court is neither a party to nor bound by this agreement.

### 2. GUILTY PLEA:

Pursuant to Rule 11(c)(1)(A), Federal Rules of Criminal Procedure, in exchange for the defendant's voluntary plea of guilty to Count IV (wire fraud) and Count VI (theft of government property) of the Indictment, the United States agrees that no further federal prosecution will be brought in this District relating to the defendant's fraudulently obtaining Paycheck Protection

1

Program loans and Missouri Small Business Grant Program grants, of which the Government is aware at this time.

In addition, the parties agree that the U.S. Sentencing Guidelines Total Offense Level analysis agreed to by the parties herein is the result of negotiation and led, in part, to the guilty plea. The parties further agree that either party may request a sentence above or below the U.S. Sentencing Guidelines range (combination of Total Offense Level and Criminal History Category) ultimately determined by the Court pursuant to any chapter of the Guidelines and Title 18, United States Code, Section 3553(a). The parties further agree that notice of any such request will be given no later than ten days prior to sentencing and that said notice shall specify the legal and factual bases for the request.

The defendant also agrees, pursuant to the guilty plea to Counts IV and VI, to forfeit to the United States all property subject to forfeiture under the applicable statute(s), including but not limited to: any and all funds obtained as a result of the defendant's offenses of wire fraud and theft of government property.

## 3. ELEMENTS:

### a. Count IV (Wire Fraud)

As to Counts I through IV, the defendant admits to knowingly violating Title 18, United States Code, Section 1343, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant voluntarily and intentionally participated in a scheme to defraud another out of money, by means of material false representations or promises;

*Two*, the defendant did so with the intent to defraud; and

2

*Three*, the defendant used, or caused to be used, an interstate wire communication, that is the submission of Paycheck Protection Program loan applications, in furtherance of, or in an attempt to carry out, some essential step in the scheme.

### b. Count VI (Theft of Government Property)

As to Count VI, the defendant admits to knowingly violating Title 18, United States Code, Section 641, and admits there is a factual basis for the plea and further fully understands that the elements of the crime are:

*One*, the defendant voluntarily, intentionally, and knowingly stole or converted money to his/her own use, or to the use of another;

*Two*, the money belonged to the United States and had a value in excess of One Thousand Dollars ($1,000); and

*Three*, the defendant did so with intent to deprive the owner of the use or benefit of the money so taken.

## 4. FACTS:

The parties agree that the facts in this case are as follows and that the government would prove these facts beyond a reasonable doubt if the case were to go to trial. These facts may be considered as relevant conduct pursuant to Section 1B1.3:

### a. Paycheck Protection Program

In or around February 2021, in the Eastern District of Missouri, the defendant Dwayne Times and others participated in a scheme to defraud lenders, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

More specifically, Times agrees and admits that he participated in a scheme perpetrated by his mother, Dionneshae Forland, and others to fraudulently obtain Paycheck Protection Program ("PPP") loans. The PPP was a program created by the Coronavirus, Aid, Relief, and Economic Security ("CARES") Act to provide forgivable loans to small businesses for job retention and certain other expenses. To obtain a PPP loan, a qualifying business submitted a PPP loan application to a financial institution or participating lender and was required to certify, among other things, the average monthly payroll expenses and the number of employees. The amount of PPP loan for which a qualifying business was eligible was based on these certifications. Applicants also had to certify that PPP loan proceeds were to be used for eligible expenses, namely payroll.

Times agrees and admits that Forland submitted a fraudulent PPP loan application for $150,000 on behalf of his business, A Great Place to Stay LLC, to Newtek Small Business Finance ("Newtek"), a participating PPP lender. Times permitted Forland to submit this application using his name and for his benefit, and Times provided Forland with the tax identification number for a Great Place to Stay, a copy of his driver's license, and his bank account to be used for the application. Times agrees and admits that, on the PPP loan application, Forland misrepresented the average monthly payroll expenses and number of employees of A Great Place to Stay, for the purpose of inflating the amount of PPP loan that Times could receive. Specifically, the application falsely represented that A Great Place to Stay had 10 employees and an average monthly payroll of $60,000, when, in truth and fact, A Great Place to Stay had far fewer employees and monthly wages. In addition, Forland submitted with the PPP loan application fraudulent documents purporting to support the false average monthly payroll expenses and number of employees represented in the application. These documents had been falsified to make them appear as though

4

they belonged to A Great Place to Stay and to reflect payroll expenses and number of employees greater than what A Great Place to Stay actually had.  These fraudulent documents included a tax form, bank statement, and list of employees, which was falsified and did not contain any actual employees of A Great Place to Stay.

Times acknowledges that, for the purpose of executing the scheme, on or about February 27, 2021, Forland caused a wire communication from Forland's residence in Florissant, Missouri, to Newtek servers located outside of the state of Missouri, consisting of the PPP loan application submitted on behalf of A Great Place to Stay.

Times agrees and admits that, based on this fraudulent PPP loan application, Newtek disbursed approximately $150,000 in PPP loan funds into a PNC Bank account ending in -4365 in the name of Times.  Times subsequently transferred $146,000 of the PPP loan funds into a PNC Bank account ending in -3044 in the name of a Great Place to Stay.  Times did not spend the funds on payroll expenses or other permissible PPP loan expenses.

As to relevant conduct, Times also asked Forland to submit two additional PPP loan applications for Individual K.D and Individual N.M, Times' girlfriend.  Times provided Forland with the social security number or tax identification number, copy of the driver's license, and bank account information for Individual K.D. and Individual N.M. to be used for the applications. Times agrees and admits that, in or around March 2021, Forland submitted fraudulent PPP loan applications in the name of Individual K.D. and Individual N.M., respectively, to Newtek.  Both applications misrepresented the average monthly income of Individual K.D. and Individual N.M. In addition, Forland submitted fraudulent documents purporting to support this false average monthly income.  Based on these misrepresentations, Newtek approved the PPP loans and

disbursed $15,800 into the bank account of Individual K.D. and $20,800 into the bank account of Individual N.M.  In the case of Individual N.M., Times accompanied Individual N.M. as Individual N.M withdrew the PPP loan proceeds in cash at a series of ATM withdrawals between approximately April and June 2021.

Times acted as described above, despite the high probability that the funds he obtained for a Great Place to Stay and helped obtain for others were the proceeds of a fraud scheme.  Times deliberately avoided learning the true origin of the proceeds of the scheme, namely, that the funds were obtained as a result of false and fraudulent representations in the PPP loan applications submitted by Forland.

### b.  Missouri Small Business Grant Program

On or about January 28, 2021, in the Eastern District of Missouri, the defendant Dwayne Times, aiding and abetting others, willfully and knowingly stole and converted to his use or the use of another, money of the United States, that is, a Missouri Small Business Grant.

More specifically, Times agrees and admits that he also assisted his mother, Dionneshae Forland, and others to submit a fraudulent grant application to the State of Missouri as part of the Missouri Small Business Grant Program.  The Small Business Grant Program, administered by the Missouri Department of Economic Development, provided grants to small businesses and family-owned farms in Missouri for reimbursement of costs of business interruption caused by required closures, and other expenses incurred, in connection with the COVID-19 pandemic.  Grants awarded under the Small Business Grant Program were funded by the federal government, specifically by the Coronavirus Relief Fund, as appropriated to the State of Missouri by the

Coronavirus Aid, Relief, and Economic Security ("CARES") Act, Pub. L. No. 116-136, 134 Stat. 281 (2020).

In or around July 2020, Individual N.S., a Florida resident and friend of Times, requested the help of Times in obtaining a Missouri Small Business Grant. Individual N.S. told Times that Individual N.S. had a couple of businesses in Missouri, and Times told Individual N.S. that Forland could prepare grant applications for these companies in exchange for a $5,000 fee to be paid out of the grant proceeds. Times asked Forland to prepare and submit an application for Individual N.S., and Forland agreed. Times told Individual N.S. to send Times the tax identification numbers and other information for the Missouri businesses to be used in the application. Individual N.S. provided information for a company called Crew Hands and instructed that the application be submitted, rather than on behalf of Individual N.S., in the name of Individual A.N., another Florida resident. Times provided the information for Crew Hands and Individual A.N. to Forland. When sending this information, Times understood that Individual N.S. did not have any legitimate businesses in Missouri and Crew Hands did not have any legitimate operations. Times admits and agrees that Crew Hands was created for the sole purpose of fraudulently obtaining a Missouri Small Business Grant.

On July 27, 2020, Crew Hands was registered as a corporation in the state of Missouri. The following day, on July 28, 2020, Forland submitted the fraudulent grant application in the name of Individual A.N., but listing Forland's contact information and a bank account for Times. Times further admits and agrees that Forland falsely represented on the application that Crew Hands had been in operation since February 2017 and was in operation as of March 1, 2020, and that Forland falsely represented the number of employees, salaries paid, and other information

about Crew Hands. In addition, with the application, Forland submitted fraudulent documents, including payroll records and bank statements, that had been falsified to make them appear as though they belonged to Crew Hands and as though Crew Hands had paid wages to employees.

In or around January 2021, Forland informed Times that Times needed to be the registered agent for Crew Hands in order for the grant to be disbursed. On January 25, 2021, Forland hand wrote a Statement of Change of Registered Agent for Crew Hands changing the registered agent to Times, signed it in the name of Individual A.N., and filed it with the Missouri Secretary of State so that the grant could be disbursed to Times. On January 28, 2021, a Missouri Small Business Grant in the amount of $49,988 was disbursed into a Regions Bank account ending in -4506 in the name of a Great Place to Stay. Times agreed to let his bank account be used to receive the grant proceeds. Individual N.S. was not a signatory on this account and did not have access to the account. Shortly after the Missouri Small Business Grant was disbursed, Times withdrew $8,000 in cash before $41,737.76, the remainder of the funds in the account, were clawed back on suspicion of fraud. Times provided $5,000 in cash to Forland for what Times understood to be payment to another individual who assisted Forland in preparing the application. Times provided the remaining $3,000 in cash to Individual N.S.

Times acted as described above, despite the high probability that the funds that he helped obtain were money belonging to the federal government to which Forland, Times, and Individual N.S. were not entitled. Times deliberately avoided learning the true origin of these funds, namely, that the funds were obtained as a result of false and fraudulent representations in the application for Crew Hands submitted by Forland.

In total, between in or around July 2020 and in or around June 2021, Times assisted in causing four fraudulent PPP loans and Missouri Small Business Grants to be disbursed, in the total amount of $236,588.

**5. STATUTORY PENALTIES:**

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count IV is imprisonment of not more than 20 years, a fine of not more than $250,000, or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

The defendant fully understands that the maximum possible penalty provided by law for the crime to which the defendant is pleading guilty under Count VI is imprisonment of not more than 10 years, a fine of not more than $250,000, or both such imprisonment and fine.  The Court may also impose a period of supervised release of not more than 3 years.

**6. U.S. SENTENCING GUIDELINES (2021 MANUAL):**

The defendant understands that this offense is affected by the U.S. Sentencing Guidelines and the actual sentencing range is determined by both the Total Offense Level and the Criminal History Category.  The parties agree that the following are the applicable U.S. Sentencing Guidelines Total Offense Level provisions.

**a. Chapter 2 Offense Conduct:**

**(1) Base Offense Level:**  The parties agree that the base offense level is 7, as found in Section 2B1.1(a)(1).

**(2) Specific Offense Characteristics:**  The parties agree that the following Specific Offense Characteristics apply:

The parties agree that 10 levels should be added pursuant to Section 2B1.1(b)(1)(H), because the loss exceeds $150,000, but does not exceed $250,000.

**b.  Chapter 3 Adjustments:**

(1)  **Acceptance of Responsibility:** The parties agree that three levels should be deducted pursuant to Section 3E1.1(a). and (b), because the defendant has clearly demonstrated acceptance of responsibility and timely notified the government of the defendant's intention to plead guilty.  The parties agree that the defendant's eligibility for this deduction is based upon information presently known.  If subsequent to the taking of the guilty plea the government receives new evidence of statements or conduct by the defendant which it believes are inconsistent with defendant's eligibility for this deduction, the government may present said evidence to the court, and argue that the defendant should not receive all or part of the deduction pursuant to Section 3E1.1, without violating the plea agreement.

(2)  **Other Adjustments:** The parties agree that the following additional adjustments apply:

The parties agree that 2 levels should be decreased pursuant to Section 3B1.2(b), because the defendant was a minor participant in the criminal activity.

**c.  Estimated Total Offense Level:**  The parties estimate that the Total Offense Level is 12.

**d.  Criminal History:**  The determination of the defendant's Criminal History Category shall be left to the Court.  Either party may challenge, before and at sentencing, the finding of the Presentence Report as to the defendant's criminal history and the applicable category.  The

defendant's criminal history is known to the defendant and is substantially available in the Pretrial Services Report.

    **e.** **Effect of Parties' U.S. Sentencing Guidelines Analysis:** The parties agree that the Court is not bound by the Guidelines analysis agreed to herein. The parties may not have foreseen all applicable Guidelines. The Court may, in its discretion, apply or not apply any Guideline despite the agreement herein and the parties shall not be permitted to withdraw from the plea agreement.

## 7. WAIVER OF APPEAL AND POST-CONVICTION RIGHTS:

    **a.** **Appeal:** The defendant has been fully apprised by defense counsel of the defendant's rights concerning appeal and fully understands the right to appeal the sentence under Title 18, United States Code, Section 3742.

    **(1)** **Non-Sentencing Issues:** The parties waive all rights to appeal all non-jurisdictional, non-sentencing issues, including, but not limited to, any issues relating to pretrial motions, discovery, the guilty plea, the constitutionality of the statute(s) to which defendant is pleading guilty and whether defendant's conduct falls within the scope of the statute(s).

    **(2)** **Sentencing Issues:** In the event the Court accepts the plea, accepts the U.S. Sentencing Guidelines Total Offense Level agreed to herein, and, after determining a Sentencing Guidelines range, sentences the defendant within or below that range, then, as part of this agreement, the defendant hereby waives all rights to appeal all sentencing issues other than Criminal History, but only if it affects the Base Offense Level or Criminal History Category. Similarly, the Government hereby waives all rights to appeal all sentencing issues other than Criminal History, provided the Court accepts the plea, the agreed Total Offense Level and

   **b.  Habeas Corpus:**  The defendant agrees to waive all rights to contest the conviction or sentence in any post-conviction proceeding, including one pursuant to Title 28, United States Code, Section 2255, except for claims of prosecutorial misconduct or ineffective assistance of counsel.

   **c.  Right to Records:**  The defendant waives all rights, whether asserted directly or by a representative, to request from any department or agency of the United States any records pertaining to the investigation or prosecution of this case, including any records that may be sought under the Freedom of Information Act, Title 5, United States Code, Section 522, or the Privacy Act, Title 5, United States Code, Section 552(a).

**8.  OTHER:**

   **a.  Disclosures Required by the United States Probation Office:**  The defendant agrees to truthfully complete and sign forms as required by the United States Probation Office prior to sentencing and consents to the release of these forms and any supporting documentation by the United States Probation Office to the government.

   **b.  Civil or Administrative Actions not Barred; Effect on Other Governmental Agencies:**  Nothing contained herein limits the rights and authority of the United States to take any civil, tax, immigration/deportation or administrative action against the defendant.

   **c.  Supervised Release:**  Pursuant to any supervised release term, the Court will impose standard conditions upon the defendant and may impose special conditions related to the crime defendant committed.    These conditions will be restrictions on the defendant to which the defendant will be required to adhere.  Violation of the conditions of supervised release resulting in revocation may require the defendant to serve a term of imprisonment equal to the length of the

term of supervised release, but not greater than the term set forth in Title 18, United States Code, Section 3583(e)(3), without credit for the time served after release. The defendant understands that parole has been abolished

    **d.  Mandatory Special Assessment**: Pursuant to Title 18, United States Code, Section 3013, the Court is required to impose a mandatory special assessment of $100 per count for a total of $200, which the defendant agrees to pay at the time of sentencing. Money paid by the defendant toward any restitution or fine imposed by the Court shall be first used to pay any unpaid mandatory special assessment.

    **e.  Possibility of Detention**: The defendant may be subject to immediate detention pursuant to the provisions of Title 18, United States Code, Section 3143.

    **f.  Fines, Restitution and Costs of Incarceration and Supervision**: The Court may impose a fine, restitution (in addition to any penalty authorized by law), costs of incarceration and costs of supervision. The defendant agrees that any fine or restitution imposed by the Court will be due and payable immediately. Pursuant to Title 18, United States Code, Section 3663A, an order of restitution is mandatory for all crimes listed in Section 3663A(c). Regardless of the Count of conviction, the amount of mandatory restitution imposed shall include all amounts allowed by Section 3663A(b) and the amount of loss agreed to by the parties, including all relevant conduct loss. The defendant agrees to provide full restitution to all victims of all charges in the indictment.

    **g.  Forfeiture**: The defendant knowingly and voluntarily waives any right, title, and interest in all items seized by law enforcement officials during the course of their investigation, whether or not they are subject to forfeiture, and agrees not to contest the vesting of title of such items in the United States. The defendant agrees to abandon his interest in all seized items and

13

further agrees that said items may be disposed of or destroyed by law enforcement officials in any manner without further notice.  By abandoning these items, the defendant waives any future rights to receive additional notice, a valuation of the items, or the opportunity to submit a claim to contest the disposition or destruction of the items that may exist under any policies or procedures of the seizing agency(ies).

The defendant agrees the stipulated facts above are sufficient to support forfeiture of certain assets pursuant to the applicable forfeiture authorities.  Defendant specifically agrees to the forfeiture of the following:  Approximately $91,500.12 seized from the bank account ending in -3044 in the name of A Great Place to Stay at PNC Bank; and approximately $5,188.56 seized from a bank account ending in -4365 in the name of Dwayne Times at PNC Bank.  Defendant also agrees to the entry of a forfeiture money judgment against the defendant and in favor of the Government in the amount of $194,850.24.  The defendant agrees the Court may enter a consent preliminary order of forfeiture any time before sentencing, and such Order will become final as to the defendant when it is issued and will be part of the sentence.  The defendant agrees not to object to any administrative, civil, or criminal forfeiture brought against any assets subject to forfeiture.  The defendant will execute any documents and take all steps needed to transfer title or ownership of said assets to the government and/or to rebut the claims of nominees and/or alleged third party owners.  The defendant knowingly and intelligently waives all constitutional, statutory, and equitable challenges to any forfeiture carried out in accordance with this plea agreement, including but not limited to that defendant was not given adequate notice of forfeiture in the charging instrument.

## 9. ACKNOWLEDGMENT AND WAIVER OF THE DEFENDANT'S RIGHTS:

In pleading guilty, the defendant acknowledges, fully understands and hereby waives his rights, including but not limited to: the right to plead not guilty to the charges; the right to be tried by a jury in a public and speedy trial; the right to file pretrial motions, including motions to suppress or exclude evidence; the right at such trial to a presumption of innocence; the right to require the government to prove the elements of the offenses against the defendant beyond a reasonable doubt; the right not to testify; the right not to present any evidence; the right to be protected from compelled self-incrimination; the right at trial to confront and cross-examine adverse witnesses; the right to testify and present evidence and the right to compel the attendance of witnesses. The defendant further understands that by this guilty plea, the defendant expressly waives all the rights set forth in this paragraph.

The defendant fully understands that the defendant has the right to be represented by counsel, and if necessary, to have the Court appoint counsel at trial and at every other stage of the proceeding. The defendant's counsel has explained these rights and the consequences of the waiver of these rights. The defendant fully understands that, as a result of the guilty plea, no trial will, in fact, occur and that the only action remaining to be taken in this case is the imposition of the sentence.

The defendant is fully satisfied with the representation received from defense counsel. The defendant has reviewed the government's evidence and discussed the government's case and all possible defenses and defense witnesses with defense counsel. Defense counsel has completely and satisfactorily explored all areas which the defendant has requested relative to the government's case and any defenses.

15

The guilty plea could impact defendant's immigration status or result in deportation. In particular, if any crime to which defendant is pleading guilty is an "aggravated felony" as defined by Title 8, United States Code, Section 1101(a)(43), removal or deportation is presumed mandatory. Defense counsel has advised the defendant of the possible immigration consequences, including deportation, resulting from the plea.

## 10. <u>VOLUNTARY NATURE OF THE GUILTY PLEA AND PLEA AGREEMENT</u>:

This document constitutes the entire agreement between the defendant and the government, and no other promises or inducements have been made, directly or indirectly, by any agent of the government, including any Department of Justice attorney, concerning any plea to be entered in this case. In addition, the defendant states that no person has, directly or indirectly, threatened or coerced the defendant to do or refrain from doing anything in connection with any aspect of this case, including entering a plea of guilty.

The defendant acknowledges having voluntarily entered into both the plea agreement and the guilty plea. The defendant further acknowledges that this guilty plea is made of the defendant's own free will and that the defendant is, in fact, guilty.

## 11. <u>CONSEQUENCES OF POST-PLEA MISCONDUCT</u>:

After pleading guilty and before sentencing, if defendant commits any crime, other than minor traffic offenses, violates any condition of release that results in revocation, violates any term of this guilty plea agreement, intentionally provides misleading, incomplete or untruthful information to the U.S. Probation Office or fails to appear for sentencing, the United States, at its option, may be released from its obligations under this agreement. The Government may also, in its discretion, proceed with this agreement and may advocate for any sentencing position supported

16

by the facts, including but not limited to obstruction of justice and denial of acceptance of responsibility.

## 12. **NO RIGHT TO WITHDRAW GUILTY PLEA:**

Pursuant to Rule 11(c) and (d), Federal Rules of Criminal Procedure, the defendant understands that there will be no right to withdraw the plea entered under this agreement, except where the Court rejects those portions of the plea agreement which deal with charges the government agrees to dismiss or not to bring.

5/23/22
Date

JONATHAN A. CLOW
Assistant United States Attorney

5-23-22
Date

DWAYNE TIMES
Defendant

5-23-22
Date

BRET M. RICH
Attorney for Defendant

17